# IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
# DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| **JESUS MARIA ESPIRITO-SANTO** <br> **a/k/a DAVID HERNANDEZ-RIVERA,** <br> Petitioner, <br> <br> v. <br> <br> **UNITED STATES OF AMERICA,** <br> Respondent. | ) D.C. CV. NO. 2003-079 <br> ) <br> ) Ref.: CR. NO. 2000-722-02 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

# MEMORANDUM OPINION

**GÓMEZ, C.J.**

Petitioner Jesus Maria Espirito-Santo ("Espirito-Santo") is before the Court on a motion to vacate, set aside or correct his sentence under 28 U.S.C. 2255 alleging ineffective assistance of trial counsel. Also before the Court are the government's response in opposition thereto and Espirito-Santo's reply.

## I. FACTS AND PROCEDURAL HISTORY

As this opinion is written for the benefit of the parties, only those facts pertinent to this analysis will be recited. Espirito-Santo pled guilty to conspiracy to possess with intent to distribute cocaine more than 150 kilograms of cocaine in violation of 21 U.S.C. § 846.[1] Although the plea agreement does not exist in written form, Espirito-Santo, with the assistance of a Spanish interpreter and his retained counsel, Stephen A. Brusch ("Brusch"), filed an Application for Permission to Enter a Plea of Guilty. The substance of the plea was that he would plead guilty to Count One,

---

[1] Jesus Maria Espirito Santo a/k/a David Hernandez- Rivera was charged along with his codefendant, Juan Mota.

the government would dismiss Count Two, and the government would recommend a sentence of ten (10) years pursuant to Federal Rules of Criminal Procedure, Rule 11(e)(1)(c). Also, if he provided substantial assistance, the government would file a motion for a sentence of less than ten (10) years.

In a Judgment entered on September 13, 2002, Espirito-Santo was sentenced to ten (10) years imprisonment, five (5) years supervised release, and a special assessment of $200.00. No direct appeal was filed. Then, on May 6, 2003, Espirito-Santo filed the instant motion under section 2255 alleging that:

> 1. He was prejudiced by his counsel's failure to seek a downward departure based on his status as a deportable alien.
>
> 2. The government should have filed a motion for reduction of sentence on his behalf under Rule 35(b)(2) of the Federal Rules of Criminal Procedure.

The government argued, on the other hand, that a downward departure for alienage was not available to Espirito-Santo, further argued that he had not provided information that would rise to the level that would interest the government in filing a motion for downward departure under Fed. R. Crim. P. 35(b)(2). In reply, Espirito-Santo argued for the first time, nineteen months after his original 2255 motion was filed, that he had requested that his counsel, Brusch, file an appeal. He also argued that a downward departure was available to him, and the government didn't seek one because his counsel didn't bargain for that relief during the plea.

(Reply at 3-4.)

## II. DISCUSSION

### A. Standards of Review

Sixth Amendment claims of ineffective assistance of counsel should ordinarily be raised in collateral proceedings pursuant to 28 U.S.C. § 2255 rather than on direct appeal. *See United States v. Hankerson*, 496 F.3d 303, 310 (3d Cir. 2007). Where, as here, the record is sufficient to allow a determination of ineffective assistance of counsel, an evidentiary hearing to develop the facts is not needed. *See, e.g., United States v. Headley*, 923 F.2d 1079, 1083 (3d Cir. 1991); *see also* Rules Governing Section 2255 Proceedings, Rule 8.

A section 2255 motion is not a substitute for a direct appeal and serves only to protect a defendant from a violation of the constitution or from a statutory defect so fundamental that a complete miscarriage of justice has occurred. *Reed v. Farley,* 512 U.S. 339, 348-49 (1994) (citing *Hill v. United States*, 368 U.S. 424, 428 (1962)). Instead, it permits a court to afford relief "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. Even an error

that may justify a reversal on direct appeal will not necessarily sustain a collateral attack. *See United States v. Addonizio,* 442 U.S. 178, 184-85 (1979). "[T]he court is not engaging in a prophylactic exercise to guarantee each defendant a perfect trial with optimally proficient counsel, but rather to guarantee each defendant a fair trial, with constitutionally competent counsel." *Marshall v. Hendricks*, 307 F.3d 36, 90 (3d Cir. 2002).

To prevail on a claim of ineffective assistance of counsel, Espirito-Santo must satisfy the two-part test enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984). First, he must show that, considering the facts of the case, his counsel's challenged actions were unreasonable. *Id.* at 690. The Court must review Espirito-Santo's claim under the "strong presumption" that his counsel's conduct "falls within the wide range of reasonable professional assistance;" that is, Espirito-Santo must "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 688. Second, he must show that he was prejudiced by counsel's conduct in that there is a "reasonable probability" that deficient assistance of counsel affected the outcome of the proceeding at issue. *Id.* at 694-95.

**B. Espirito-Santo was not prejudiced by his counsel's failure to seek a downward departure based on his status as a deportable alien.**

As stated in the change of plea colloquy, Espirito-Santo

illegally reentered the United States and committed the offense in question on or about November 8, 2000 after having been deported back in 1999. (Change of Plea Tr. at 16-17, Mar. 11, 2002.) During Espirito-Santo the change of plea of and his codefendant, the Honorable Thomas K. Moore stated:

> THE COURT: It is substantially likely that upon completion of any term of imprisonment . . . you will be deported, sent home.
>     One of the conditions – well, this means what's called supervised release would still be in place. One of the conditions would be that you not try to come back in the United States, if it's a five year term of supervision or release under which there is [sic] certain of these conditions that will apply to you. So in all likelihood the only one that will apply will be the one that you not come back or not try to come back in the United States.
>     Do . . . you have any questions about that?
>
> . . . .
>
> DEFENDANT SANTO: No.

(*Id.*) As Espirito-Santo's Application for Permission to Enter a Plea of Guilty made clear,[2] he was facing an offense penalty of ten years to life imprisonment, five years supervised release, and a fine of Four Million Dollars ($4,000,000.00). (Application at 3.) He received the mandatory minimum of ten years with an offense level of 33, which was below the advisory sentencing guideline range of 135-168 months under the federal Sentencing Guidelines. (Presentence Report at 9.)

---

[2] Espirito-Santo was assisted by a Spanish interpreter and his counsel in executing this plea agreement.

Espirito-Santo now argues that his counsel was ineffective in failing to seek a downward departure because of his alienage and deportability, and as a result he has been denied the benefit of participating in "certain benefits enjoyed by other inmates." (2255 Mem. at 1.) As with any other claims under § 2255, it is petitioner's burden to prove ineffective assistance of counsel. *Gov't of the Virgin Islands v. Nicholas,* 759 F.2d 1073, 1081 (3d Cir. 1985).

The government argues on the other hand that:

(1) Espirito-Santo did not present any ground at sentencing nor in his § 2255 motion for relief that would raise the specter of a departure pursuant to U.S.S.G. Section 5K2.0.

(2) The government neither consented to, nor requested, a departure from the guidelines due to petitioner's alienage, thus the court was without jurisdiction to depart from the applicable guideline range.

(3) A defendant is not denied effective assistance of counsel based on counsel's failure to raise the issue of downward departure based upon alienage at sentencing.

(Gov't Response at 5-6.) Espirito-Santo does not seem to dispute that the mandatory minimum sentence of ten years, with an offense level of 33, was below the advisory sentencing guideline range of 135-168 months under the United States Sentencing Guidelines ("USSG"). Nonetheless, he argues that his counsel rendered ineffective assistance in failing to seek a downward departure based on his status as a deportable alien.

Espirito-Santo relies on *United States v. Lopez-Salas*, 266

F.3d 842, 845 (8th Cir. 2001) to support his argument. In *Lopez-Salas*, which is not binding on this Court, and which was decided prior to *United States v. Booker*, 543 U.S. 220 (2005), the district court departed downward because the defendants would not be eligible to spend the last six months of their sentence in a half-way house, and they would also not be eligible for early release upon successful completion of a drug treatment program. On appeal, the Court of the Court of Appeals for the Eight Circuit ("Eight Circuit") reversed the district court noting that:

> Other than for crimes related directly to alien status, such as illegal re-entry into the country, the guidelines do not mention the effects of alien status as a departure factor. If a factor is unmentioned in the guidelines, the court must consider the "structure and theory of both the relevant individual guidelines and the guidelines taken as a whole," to determine whether the factor makes the case unusual or atypical enough to take the case out of the heartland. In doing this, the court must be cognizant of the fact that the Commission expected departures based on unmentioned factors would be "highly infrequent."

*Id*. at 846 (internal citations omitted). The Eight Circuit went on the state that while alienage, or the collateral consequences flowing therefrom, may be the basis for departure in some circumstances, courts did not have "unfettered authority to depart whenever that factor is invoked. The Court must still articulate why that factor is sufficiently atypical to justify a departure."

*Id*. at 847 (internal citations omitted).[3]

In the Third Circuit, the Court of Appeals has noted, but not specifically decided, the issue whether deportable alien status can justify a downward departure. *See United States v. Colon*, 45 Fed. Appx. 210, (3d Cir. 2002) (citing *United States v. Marin-Castaneda*,

---

[3] Circuit courts had been split for some time on the issue of whether a sentencing court had the authority under the Sentencing Guidelines to downwardly depart based on a defendant's deportable status. Generally, circuits that recognize the possibility of granting such a departure based on a defendant's deportable status have held that such downward departures would only be appropriate in extraordinary circumstances. In *United States v. Farouil*, 124 F.3d 838, 847 (7th Cir. 1997), the district court noted that it had discretion to depart downward based on defendant's deportability where it presented an "unusual or exceptional hardship." In *United States v. Restrepo,* 999 F.2d 640, 642-43 (2d Cir.), *cert. denied,* 114 S. Ct. 404 (1993), the district court allowed a downward departure from the applicable Guidelines on the basis of collateral consequences faced by the defendant as a result of his status as a deportable alien. On appeal, the Second Circuit held that "pertinent collateral consequences of a defendant's alienage" might serve as a valid basis for departure if those consequences were "extraordinary in nature or degree." *Id*. at 644. Examining the facts of the case, however, the Second Circuit found that the specific collateral consequences faced by the defendant were not of such an extraordinary nature or degree to justify a downward departure. *Id.* Subsequent to *Restrepo,* both the Fifth and Tenth Circuits have followed the Second Circuit's holding. *United States v. Nnanna,* 7 F.3d 420, 422 (5th Cir. 1993) ("Collateral consequences, such as the likelihood of deportation or ineligibility for more lenient conditions of imprisonment, that an alien may incur following a federal conviction are not a basis for downward departure."); *United States v. Mendoza-Lopez,* 7 F.3d 1483, 1487 (10th Cir. 1993) (holding "unduly harsh consequences of imprisonment for deportable aliens" are not grounds for downward departure), *abrogated on other grounds by United States v. Fagan*, 162 F.3d 1280 (10th Cir. 1998) (internal citation omitted) (holding that unless specifically prohibited by the Sentencing Guidelines, any factor--in this case, remorse--if it is present to some exceptional degree, may be considered as a potential basis for departure); *see also United States v. Alvarez-Cardenas*, 902 F.2d 734, 736-37 (9th Cir. 1990) (rejecting defendant's claim that his status as a deportable alien was grounds for a downward departure because such status does not lessen severity of the crime or defendant's culpability).

The U.S. Supreme Court tried to resolve the issue in *Koon v. United States*, 518 U.S. 81, 96, 98 (1996) when it held that only the Sentencing Commission could prevent a factor from serving as a basis for departure, and a court could depart from the applicable Guidelines range if "certain aspects of the case [are] found unusual enough for it to fall outside the heartland of cases in the Guidelines." Then, in 2005, the Supreme Court made it clear that the United States Sentencing Guidelines were advisory. *United States v. Booker*, 543 U.S. 220 (2005).

134 F.3d 551, 554 (3d Cir. 1998)).

The Court finds Espirito-Santo's argument that his counsel was ineffective for failing to request a downward departure on the basis of his status as a deportable alien without merit. Although a defendant's alienage might be the basis for a downward departure in an extraordinary case, neither his ineligibility for prison programs nor his deportability are in themselves sufficient grounds for downward departure. *See, e.g., United States v. Maung*, 320 F.3d 1305, 1308 (11th Cir. 2003) (holding that a sentencing court may not depart downward for the purpose of taking a crime out of the definition of an aggravated felony in order to shield the defendant from the immigration consequences Congress has decided should follow from commission of such crimes).

Based upon the attendant circumstances here, Espirito-Santo failed to demonstrate that counsel's decision not to move for a downward departure falls outside the wide range of reasonable professional assistance, and that there was any likelihood of success if such a motion had been presented. Moreover, Espirito-Santo received the benefit of the plea agreement for which he bargained under Rule 11(e)(1)(c) of the Federal Rules of Criminal Procedure.[4]

---

⁴ Rule 11(e)(1)(c) provided as follows:

(e) Plea Agreement Procedure.
(1) In General. The attorney for the government and the attorney for the defendant-or the defendant when acting pro se-may agree that, upon the
(continued...)

This court has not found binding authority that has upheld a downward departure based on collateral consequences related directly or indirectly to a defendant's status as an alien. Therefore, counsel's failure to request such a departure does not constitute ineffective assistance of counsel. Having failed to satisfy the first the first prong of *Strickland*, the Court need not proceed to the second prong. *Strickland*, 466 U.S. at 697.

**C. Espirito-Santo's instant motion for downward departure under Federal Rules of Criminal Procedure, Rule 35(b)(2) is without merit.**

Espirito-Santo also takes the opportunity in the instant § 2255 motion to seek a downward departure pursuant to Federal Rule of Criminal procedure 35(b)(2) based upon information he allegedly possesses about other drug traffickers. (2255 Mem. at Ex. (b).) In response, the government contends that Espirito-Santo "has not provided any information that would rise to the level that would

---

[4](...continued)
defendant's entering a plea of guilty or nolo contendere to a charged offense, or to a lesser or related offense, the attorney for the government will:
. . . .
(C) agree that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement or sentencing factor is or is not applicable to the case. Such a plea agreement is binding on the court once it is accepted by the court.
   The court shall not participate in any discussions between the parties concerning any such plea agreement.

Fed. R. Crim. P. 11(e)(1)(c). Since the plea in this case was entered into, Rule 11(e)(1)(c) was amended in 1999 and renumbered as Rule 11(c)(1)(C). The version of Rule 11(e)(1)(C) in effect at the time Espirito-Santo was sentenced allowed the government and Espirito-Santo to "agree that a specific sentence is the appropriate disposition of the case." Rule 11(e)(1)(C), Fed. R. Crim. P. (1998).

interest the government in filing a motion for a downward departure. As such, the government does not intend to file a motion pursuant to Rule 35(b)(2), which effectively is the only way means for the court to reduce petitioner's sentence." (Response at 6-7.) The Court agrees. Furthermore, a motion under 28 U.S.C. § 2255 is not the appropriate vehicle in which to file a motion under Fed. R. Crim. P. 35(b)(2).

**D. Espirito-Santo's counsel did not provide ineffective assistance by failing to seek a reduction pursuant to USSG § 2X1.1.**

On this issue, Espirito-Santo argues that his counsel was ineffective in failing to seek a three-level decrease pursuant to USSG § 2X1.1. The government counters that § 2X1.1, which reduces the base offense level for certain attempts, solicitations, or conspiracies not covered by a specific offense guideline,[5] is inapplicable to petitioner's case, and the appropriate section,

---

[5] United States Sentencing Guideline § 2X1.1 provides in relevant part:

(a) Base Offense Level: The base offense level from the guideline for the substantive offense, plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty.

(b) Specific Offense Characteristics
    ....
    (2) If a conspiracy, decrease by 3 levels, unless the defendant or a co-conspirator completed all the acts the conspirators believed necessary on their part for the successful completion of the substantive offense or the circumstances demonstrate that the conspirators were about to complete all such acts but for apprehension or interruption by some similar event beyond their control.
    ....

(c) Cross Reference
    (1) When an attempt, solicitation, or conspiracy is expressly covered by another offense guideline section, apply that guideline section.

2D1.1, was in fact used in this case. The Court agrees with the government's argument.

Espirito-Santo pled guilty to conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846. The Presentence Report indicates that under § 2D1.1 his base offense level had been calculated as 38. With additional reductions to the base level computations, the total offense level was reduced to 33. Section 2X1.1 is inapplicable to this case, and Espirito-Santo would not have been eligible for a three-level decrease in his offense level where the substantive offense and circumstances demonstrate that the reason Espirito-Santo and his co-conspirators did not complete all acts of the criminal enterprise was due to apprehension or interruption by U.S. Customs. Counsel was not ineffective in failing to seek a USSG reduction under § 2X1.1 that would have been inapplicable to Espirito-Santo.[6]

**E. Espirito-Santo's belated claim that he that requested an appeal of his sentence is untimely.**

Espirito-Santo argues for the first time, more than 27 months after his judgment was entered, more than 19 months after he filed this motion under § 2255, and only after the government's response to his § 2255 motion, that his counsel provided ineffective assistance in failing to file an appeal despite his request that he

---

[6] *See, e.g., United States v. Brown*, 65 F.Supp.2d 321, 324 (E.D.Pa. 1999) (holding that counsel was not ineffective in failing to raise a claim under 2X1.1 where that claim was inapplicable to the defendant).

do so. Section 2255 sets forth a 1-year statute of limitations for filing such motion. That limitation period runs from the date on which the judgment of conviction becomes final; the date on which the impediment to making a motion created by governmental action is removed; the date on which the right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or the date on which the facts supporting the claim presented could have been discovered through due diligence. 28 U.S.C. § 2255(f).

Espirito-Santo makes no attempt whatsoever to explain his delay in raising this issue, and the Court finds that the original and amended motions do not state claims that are "tied to a common core of operative facts" that would make relation back appropriate in this case. *Hodge v. United States*, 554 F.3d 372, 378 (3d Cir. 2009) (quoting *Mayle v. Felix*, 545 U.S. 644 (2005)). This claim must fail.

### III. CONCLUSION

For the reasons stated, the Court will deny Espirito-Santo's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. An appropriate order follows.

**E N T E R:**

/s/
_____
**CURTIS V. GÓMEZ**
**CHIEF JUDGE**